We'll hear argument next in number 2011-1196, Gelman against Tellular Corporation. We'll hear argument next in number 2011-1196, Gelman against Tellular Corporation. Mr. Vaughn, when you're ready. May it please the court. My name is Courtney Vaughn and I represent the appellant Toby Gelman, the trustee of the Mayor Michael Leibovitz Trust. Mr. Leibovitz was one of the co-inventors of the 451 patent and is now deceased. The central issue in this appeal is whether there is an underlying consulting agreement between Mr. Leibovitz and his company, Cellular Alarm Systems, and Mr. Seibert and his company, Timer Corporation. And also whether or not that consulting agreement addresses specifically whether inventions should be presently assigned by operation of the agreement or whether there is merely an obligation to assign any inventions in the future. Let's assume for present purposes that the consulting agreement did not in and of itself, well, set aside the consulting agreement. Let's assume that the arrangement, the overall arrangement between Mr. Leibovitz and Mr. Seibert, is that the correct pronunciation, Seibert or is it Seibert? I believe it's Seibert. Mr. Seibert and Mr. Leibovitz was not such as to give Mr. Leibovitz automatic full possession and ownership of the patent. Let's assume that the two inventors, at least at the outset, each had separate property interests in the patent until and unless there was an assignment. Why is it that Section 261 of Title 35, which requires that all assignments of patents be in writing, why doesn't that substantially support the argument that there can be no assignment in this case? Because the one thing we know is that we don't have, at least in the record, an executed final complete assignment signed by the parties. That's correct. There is no… So setting aside the statute of fraud, setting aside partial performance, setting aside the effect of the unsigned agreement and whether or not it constituted a present or future assignment obligation, why isn't the problem insuperable problem that there's just no written assignment? Well, absent an agreement that puts in writing the obligation to assign or the present assignment of future inventions, I would agree with you. And so if you set aside all of the facts related to the underlying agreement and the agreement itself… But we don't really have a written agreement, do we? I mean, what we have is a draft, which we don't know ultimately whether the party's executed or not, right? And I would assume that Section 261, in requiring that an assignment be in writing, would require something other than that somebody come up with a draft and say, there's the assignment. I believe under Texas law, it's clear that the consulting agreement, if there's Booker versus Booker, which is cited in our briefs, states that if you have an unsigned agreement and there's partial performance of that agreement, then the courts hold that that agreement is in fact in effect. It's enforceable, but it doesn't mean it's a written, signed instrument. In other words, we have a federal question here under 261 of whether this is an assignment that's in writing, right? I mean, that is a, first and foremost, a federal question. Now, it may be that Texas law will say, well, the statute of frauds will not be invoked if you have partial performance. And therefore, if you have an unsigned agreement, you have partial performance, it may be the equivalent of a signed agreement or at least enforceable. But that doesn't make it an assignment in writing. That's the problem I'm having at the outset. You understand? I understand the question. And I do agree it is a federal question. And the issue, I think the result would be if you do not allow for the situation that occurred here, then there would be no ability absent. There would essentially be no, in this type of situation, there would be no present assignment of future inventions because, in effect, you would always… There would be no writing. There would be no writing. Well, because there would always have to be a written assignment. Yeah. So, it would preclude, to me, I believe it would preclude the situation where the agreement contemplates future assignment of present, excuse me, present assignment of future inventions. So, with that in mind, there is substantial evidence in the record. Now, the district court did not reach the question of whether, in fact, there was an agreement under Texas law. But there is substantial evidence of partial performance to establish that the parties did, in fact, agree to the contract specifically. And that's the checks? Well, that would be – the checks would be certainly a portion of that, Your Honor. But also, if you look at the conduct of the parties, Mr. Seibert continued on and actually helped develop the invention. That's apparent from the patent itself. The checks do establish that Mr. Leibowitz, in fact, paid Mr. Seibert for his work, which I believe is performance of the contract. In addition, paragraph 8, which discusses the present invention or raises the question of the present invention, also addresses that – and this language is at – it's also in the district court's opinion, but it's at appendix 245 to 246. At the end of that, it does state that all expenses incident to the filing of such applications and the prosecution thereof and the conduct of such litigation shall be borne by cellular alarm. There's evidence in the record by way of an affidavit from Ms. Gelman that cellular alarm and Mr. Leibowitz did, in fact, pay for all of the prosecution expenses and attorney's fees in connection with prosecution of the patent, as well as maintenance fees since that time. So there's substantial evidence of partial performance here. And certainly the court could find that disagreement is in effect. Secondly, with respect to the specific language of paragraph 8 of that agreement, which is addressed by the district court, we believe the district court erred by concluding that this was an agreement to assign rather than a present assignment of future inventions. Specifically, the language used in paragraph 8 states that the invention shall be and remain the exclusive property of cellular alarm. This is distinguishable language from the Arachnid case and the Speedplay case, which were both cited by the district court as well as the appellees here. Specifically, the use of the word remain, it's not just shall be, it's shall be and remain the exclusive property of cellular alarm. Therefore, that indicates as of this time, these inventions are owned by cellular alarm. No, I mean, I guess I'm confused by your reading. Shall be and remain, why doesn't that mean simply the remain part mean after it is? In the future, it will remain. When it becomes so in the future, it will remain thereafter. Isn't that the common sense, clear meaning of shall be and remain? I certainly see that point of view, but I believe that it certainly means that it remains the property as of this time. It remains the property of cellular alarm. In addition to that language, the next sentence goes on and is contrasted with the assignment provisions in the Arachnid and Speedplay cases. Rather than simply agreeing to assign in the future, there's a statement here that the consultant agrees to execute any and all assignments or other transfer documents, which are necessary in the sole opinion of cellular alarm. So, and it goes on to address, to vest in cellular alarm all right title and interest in such work product. So, it's not an agreement that I will assign. It's if cellular alarm determines that for some reason we need additional documentation, I'll cooperate. That's the way that should be read. So, if you interpret both that statement and the prior statement, shall be and remain. So, prior to the execution of any and all assignments or other transfer documents, your position is that notwithstanding that language, the assignment had already occurred. That's correct. I mean, normally one would think execution of an assignment is the point at which the assignment occurs. That is true. But again, this is saying that in the context of this agreement, execution of assignment really just means if later it's determined that we need some additional paperwork, I agree to provide whatever paperwork cellular wants. That's what the language indicates. I'll reserve the remaining time. Very good. Thank you, Mr. Bell. Ms. Hartzell. May it please the court. I'd first like to address the point of partial performance and the important aspect of Texas law that was left out of appellant analysis of that exception to the statute of frauds. And as described in the district court opinion, that test requires that the partial performance itself must explicitly refer to the contract that is trying to be asserted. And also that the only reason for that performance to have occurred is in performance of that contract. And none of the pieces of evidence identified by the appellant satisfy either of those problems. I didn't understand the district court to have decided the case on that ground. I thought the district court assumed all of the facts regarding the statute of frauds, Texas law, and so forth in favor of Gelman and then said notwithstanding all that, that under speed play arachnid, this contract isn't good enough to do it. And you seem to be going after the assumptions made by the district court in favor of Gelman from the outset. Am I correctly characterizing? You are correctly characterizing the basis for the district court's decision. It was entirely focused on whether or not any of the theories, assuming every aspect of those theories to be in appellant's favor, if those theories granted legal title at the start of this law. You're correct. And the district court was correct in that decision. I'm clarifying the argument made by appellant with respect to the contract. It's difficult for us, certainly. You're not inviting us then to engage in a deep effort to drill down and figure out what Texas law is on partial performance and statute of frauds. No, I prefer that you're not. The aspect of the district court's decision with respect to equitable versus legal title is correct with respect to each of the arguments raised by the appellant. First, on the hired to invent aspect, the theory that just based upon the employment relationship, although not employee-employer, independent contractor and hiring party, in this case, the argument made by the appellant is that that is sufficient to establish an automatic transfer of title. But the district court is correct based upon this court's decision in Teats as well as the argument made by the appellant herself in front of the district court in the supplemental briefing that all that the hired to invent theory would allow is equitable title for the hiring party if it did, in fact, apply to an independent contractor. Similarly, the district court is correct that the language of the agreement that you've previously discussed with appellant is nearly identical to that of the Arachnid case, that the patent rights shall be that of the hiring party and that the consultant in that case agreed to assign and in this case agrees to execute any and all assignments indicates a future assignment would take place and, in fact, there would need to be no reference to assignments in that language if this was sufficient to do so. Well, it does seem to me it's a fair point that this isn't quite the same as Arachnid. The word remain does create perhaps some lack of clarity as to the scope of what shall be means, what it denotes. And execute any and all assignments or other transfer documents seems to be more focused on documentation than on the actual legal act of assignment. Wouldn't you agree? Well, in every other instance, the written document itself is the actual act of assigning. And as you discussed with the appellant in the situation that the appellant tried to distinguish where future or present rights are being assigned in the contract, it's still a written contract that's being signed that satisfies the requirements of Rule 261. Well, it's execute in order to vest cellular with all right title claim and interest. Purpose for the documentation. Yes, that seems consistent. Suggesting that perhaps until you've done that, you haven't vested all right title claim and interest in cellular. I would agree with that, with that interpretation. The other arguments that have been raised by the... I mean, basically, you're looking at the contract to decide whether the assignment took place a long, long time ago or whether it remains to be done. If it remains to be done, your adversary has said he loses. So that's just a nutshell, huh? One issue case. Primarily, yes. The performance of the parties does, in fact, indicate that our interpretation is correct in that there was an actual written assignment from Mr. Seibert to Mr. Leibowitz, not to the company that is discussed in this draft contract, but to Mr. Leibowitz directly with respect to an unrelated patent application. And in that instance, the assignment was in writing. It included the title of the patent application at issue. And if the parties were of the understanding that no such written agreement was necessary as a result of this draft contract, then that would have been superfluous. So if somebody wanted to spend the money doing it, presumably you'd go to a Texas state court and have a quiet title action? I believe there is one pending, yes. What about the point I raised with your opposing counsel that the possible application of Section 261 of Title 35? We did argue before the district court that the statute requires the writing of— You alluded very briefly in your brief, if I'm not mistaken, to 261, but didn't make a separate argument on that. So I gather that either you think you have overwhelming arguments in other respects and decided not to make an extra argument no matter how strong, or you have a problem with that. When we made the argument in front of the district court, it was the basis of our opening motion to dismiss. The only evidence that had been identified as the appellant for ownership of the patent was the assignment that is now admitted to be related to an unrelated document. Okay, but as to whether there is a separate federal requirement that the assignment be in writing, presumably that doesn't mean that somebody brings in a piece of paper that has an assignment but doesn't have signatures on it. Is that, in your view, a valid separate basis for upholding what the district court did without getting into the whole question of whether this document, assuming it were treated as being adequate to establish to be enforceable under Texas law in light of the partial performance, that nonetheless there'd still be a bar to the validity of the assignment? I think that... That was a very poorly put question. I understand your point. I think that that could serve as a basis for affirming the district court's decision. The policy set out by the Patent Office in setting forth that rule is to make sure that title is... Actually, it's Congress that set out that rule. ...is to make sure that title is clear and to prevent this kind of situation. Pretty much to prevent this kind of case from coming to this kind of court, right? Exactly. So, I guess, let me cut to the chase. I'm a little unclear as to why you don't throw yourself enthusiastically behind this argument, which leads me to think there's a problem with it. If there is, I'd like to know what it is. I hesitate because in circumstances of hired to invent, which we do not believe is applicable to the facts of this case, there have been circumstances in which there is no writing and the court has found a transfer of title. Sure. All right. I understand that. So, that is why I hesitate to say that it is a blanket bar. But if the circumstances were such, this contract provided that Mr. Seibert never had any interest at all, right? From the get-go, he was not an inventor. He didn't have any ownership. You don't have to have an assignment then, do you? I would say if he had signed this contract that said that, then that would constitute the signed assignment that's required. If there are no further questions on this issue, I'd like to address the appellant's request for additional discovery. The request is to be determined under a Fifth Circuit law, and Fifth Circuit law states that the denial of discovery is considered on appeal under an abuse of discretion standard. And it was recently addressed by the Fifth Circuit in a case, Jasper v. FEMA. And in that case, the court emphasized, the Fifth Circuit emphasized that vague assertions of the need for discovery are unavailing. And that is what we have here. There is no indication that the discovery requested is likely to lead to any fruitful results. Additionally, the appellant had the opportunity throughout the lawsuit to pursue that discovery. And the lawsuit was pending for three years. The appellant's own actions in filing the unrelated assignment three months before filing suit, but seven years after the patent issued, indicate that the appellant was aware that there was going to be a question about standing, and that there were problems with standing. So throughout that time period, from March of 2007 to the court's decision in December of 2010, they had the opportunity to pursue that discovery. And additionally, they actually did pursue that discovery from the Seibert heirs, and received confirmation and document production from the Seibert heirs that they had received what was within their possession relating to any ownership of the 451 patent, any signed or unsigned agreements relating to the 451 patent. So all of those aspects indicate that there is, that further discovery is unlikely to be fruitful. And the request that has been made in the brief is the request to take a deposition of the heirs to ask where else documents might exist. The heirs have indicated that they searched Mr. Seibert's business files and that they did not find anything. So the scope of the discovery requested is limited and unlikely to lead to anything useful. I'd also like to discuss the Appelese request that the dismissal be with prejudice. The court below erred in the Appelese view by ignoring the contractual arrangement that had been reached between the Appelese and the Seibert heirs. And that license prevents the Seibert heirs from joining in any lawsuit against the Appelese. Or in taking any steps to upset the title rights that were granted to the Appelese. And as in the Ethicon case, that should prevent the appellant from having the opportunity to join the Seibert heirs or to find any way around the dismissal. Additionally... If Gelman should prevail in an action which you tell me is pending, I think in Texas courts? Yes. Then presumably the Seibert heirs would be required to convey their interest in the patent to Gelman, correct? That would be the effect. Correct. But the evidence available to the appellant to prove that is what we have seen in this case, none of which is sufficient to show that there was a present assignment or a work made for hire. And as with the previous Federal Circuit cases that affirmed the district court's decision of dismissal. Wait, wait, wait. That would be an equitable interest that Gelman would have in Seibert's property right in the patent, which could be converted into legal title through an appropriate action in state court, right? That's correct. We're not deciding the question of equitable rights. We're deciding the question of legal rights. So anything we say doesn't necessarily dictate how the Texas case comes out, correct? Correct. So why isn't it the right thing to do to say, leave the parties exactly where they are? And if the Texas courts decide that Seibert really ought to have to transfer... Then so be it. And we'll see where we are then. The rationale for that would be, as with the Fielder case in which this court affirmed the dismissal with prejudice, that the appellant had the opportunity to show those rights in the district court case and was unable to do that in the three years that they tried. So there's one matter still that you haven't addressed. I believe you filed a motion to tax your adversary with having filed a frivolous appeal. That's correct, Your Honor. Would you like to take this opportunity to withdraw that motion? No, Your Honor. Really? Yes. Okay. Thank you. Thank you. We'll hear a rebuttal. Very brief rebuttal. And I'll just take a moment to address the discovery issues. Although I don't think ultimately in this case that's going to be dispositive or particularly inform the court's decision here. Although there was some discovery that was obtained from the Seibert heirs, two of the subpoenas, there were essentially three heirs. Two of the subpoenas were quashed. And one of those in the Southern District of Texas, the court allowed some limited discovery. The Seibert estate did agree to provide some information. Importantly, though, one of the things that was not provided were communications between Leibowitz and Seibert. And we believe that in combination with the inability to depose one of the heirs to understand what documents may exist or not exist have an implication on further facts that may need to be provided. Presumably that information would be available in the Texas action, correct? That's correct. And have you obtained discovery in the Texas action? It hasn't gotten into discovery. There's a pending motion to dismiss in that action that has not been resolved yet to allow us to get into discovery. I see. But presumably that is something which you will be privy to in that action. All right. But I suppose that's what we do. All right. Go ahead. And then briefly to just bring us back to where I think this court can address the matter, and that is specifically with respect to paragraph 8 of the agreement and again the fact that this is distinguishable from Arachnid and Speedplay, not only by the fact that it uses the word remain, which I believe indicates that Cellular Alarm does in fact own the rights as of the time this agreement was reached, but also the fact that instead of just saying I agree to assign rights in the future, it actually states that if they are necessary and in the sole opinion of Cellular Alarm. So I believe those two. Well, how do we get to the end game for you to win? We need to decide that this was not a promise to assign at a future date, right? That's correct. We need to find that there was no ownership there at all. And then the document's unsigned, right? That's correct. So we got to worry about an unsigned document, right? And that would be. . . And that's going to be the substantial performance under Texas law is going to convert it into a signed document? That's correct. But then we'll have to decide that issue right here. I believe this court. . . I'm just trying to figure out if I got to write an opinion saying, well, you win. You just get to go home and you win. You first have got a paragraph H, got to be an actual. There's. . . You never had any ownership interest. Now, we got to get it signed before, right? Yes. I suppose the court could. . . How do I do that on the facts? I mean, can I rely on the fact that the trial judge just assumed for purposes of argument that all of your substantial performance facts were correct? Well, I don't know that you would have to assume that. The facts are. . . Send it back, don't I? Yeah. I believe that the court could alternatively reverse the holding as to the future or present assignment issue and then remand it to the Texas District Court. You really couldn't do any more than that unless. . . Yeah. I mean, nobody's briefed. . . I think that's correct. . . Texas law on partial performance today. I think that would be the best resolution here. And that's all I have. Very well. Thank you. Thank you. The case is submitted, we think.